## Case No. 11,582.

### In re RATHBONE.

[See Case No. 11,580.]

---

## Case No. 11,583.

### In re RATHBONE.

[1 N. B. R. 536 (Quarto, 145): [1] 1 Am. Law T. Rep. Bankr. 70.]

District Court, S. D. New York. 1868.

BANKRUPTCY — DISCHARGE — FALSE SWEARING — CONCEALMENT OF ASSETS.

1. A bankrupt must be held to have wilfully sworn falsely in the affidavit annexed to his inventory where he states therein that he has no assets when he has concealed his property, derived from profits in the firm of which he is really a partner, by covering them (the profits) up in the hands of his wife.

2. He is further guilty of fraud in not delivering such property to his assignees. Discharge refused.

[In the matter of Robert C. Rathbone, a bankrupt. The cause was first heard on specifications filed by a creditor of the bankrupt in opposition to his discharge. Case No. 11,580.]

John H. White, for the bankrupt.
H. P. Herdman, for the creditor.

BLATCHFORD, District Judge. The specifications for trial in this case, in opposition to the discharge of the bankrupt, are the fifth, seventh, and eighth. I do not think there is any evidence to sustain the averments of the fifth specification, namely, that the bankrupt is entitled to the two lots in Sixty-Third street, New York. As to the seventh specification, the evidence shows that the bankrupt is not, and never was, the owner of any one of the life insurance policies mentioned in the specification. The eighth specification is "that the business of Rathbone Brothers & Co., brokers, &c., in Broadway, New York, was started and built up by said bankrupt, and has so continued under his supervision to the present time; the net profits whereof are now about $35,000 per year; that said bankrupt professes to receive only about one tenth of the annual profits of said business as a clerk, and in lieu of salary, which amounts to about $3,600 per annum, his said wife represents by purchase or pretended purchase, for $4,000, a one fifth interest in said business, worth about $7,000 per year, all of which business, except those portions actually and not fraudulently sold to others, are assets in the hands of said bankrupt and should inure to the benefit of his creditors." The bankrupt sets forth, in this inventory of assets, no assets whatever, except his personal clothing, of the value of $100. In November, 1855, the bankrupt and one Halsey, being in partnership, under the firm name of Robert C. Rathbone,

[1] [Reprinted from 1 N. B. R. 536 (Quarto, 145), by permission.]

failed and made an assignment for the benefit of their creditors. The business of Rathbone Brothers & Company, referred to in the specification, is that of insurance brokers. The firm has no capital, and the business does not require any. It is the business of procuring to be effected insurance on property, and the remuneration for the services rendered consists of a percentage commission. The success of the business depends wholly on the personal exertions of those engaged in carrying it on, and there is no profit in it derived from the buying or selling of merchandise, or the employment of money or property. The bankrupt and one Hamlin commenced this business about January 1, 1855. On the 1st of January, 1856, Aaron H. Rathbone joined them. About the 1st of January, 1857, Hamlin withdrew, leaving Aaron H. Rathbone in the business with the bankrupt, under the name of Rathbone Brothers. This state of things continued until 1858, when the bankrupt withdrew and became assistant secretary of an insurance company, where he remained till 1861, at a salary of $2,000 per year. In 1861 the bankrupt became a clerk to Aaron H. Rathbone, in the insurance business, at a salary of $2,500 per year. On the 1st of November, 1863, Aaron H. Rathbone took into the business with him, as partners, Henry C. Seward, Theodore H. Knox, and William C. Greig, the bankrupt continuing with the firm as clerk. In this firm Aaron H. Rathbone was interested in the profits to the extent of three tenths, Seward three tenths, Knox two tenths, and Greig two tenths. Greig paid $8,000 to Aaron H. Rathbone for the two tenths interest in the profits of the firm. The profits of the firm were, on an average, $35,000 per year. About the 1st of October, 1866, Knox withdrew from the firm, selling out his two tenths interest to the wife of the bankrupt for $4,000, which she paid to Knox. Since that time she has claimed and received two tenths of the profits of the business, although she has not personally rendered any services in the business. The profits since she came into the firm have averaged $35,000 per year. At the time the bankrupt's wife so went into the firm, a written agreement was made between the firm and the bankrupt, under which the bankrupt has from that time been in the receipt of one tenth of the profits of the business, as a salary or compensation for his services. Thus he and his wife together received out of the profits of the firm, to the making of which they contributed nothing but the personal services of the bankrupt, three tenths of such profits, being a share amounting to $10,500 per year.

Now, although the money which the bankrupt's wife paid to Knox for the privilege of receiving the two tenths share in the $35,000 profits per annum may have been her own individual money, inherited by her from deceased relatives, it is impossible not to see through the thin disguise whereby the bankrupt has, in fraud of his creditors, been really a partner in the firm, receiving for his personal exertions in the business, three tenths of the profits, being the sum of $10,500 per annum, the manipulation being attempted to be effected by putting one tenth in the shape of a salary to himself and two tenths in the shape of an interest owned by his wife. The firm had no benefit from any services, or money, or capital, or property of the wife. The $4,000 she paid to Knox did not go to the firm. The husband was a real partner all the time. The money paid by the firm to the wife for the two tenths, was paid to her, in fact, as trustee for her husband, certainly as against his creditors, and there can be no difficulty in its being reached by the assignee in bankruptcy for the benefit of those creditors. The firm paid the entire three tenths which the bankrupt and his wife received solely for the personal services of the bankrupt. The firm received no other consideration for the three tenths, but the personal services of the bankrupt; the bankrupt alone earned the two tenths, which went to the wife, and it must be regarded as a gift by him to her in fraud of his creditors, and as property held by her in trust for him. She has it now. She owns a house at Fort Washington, for which she paid $11,000, and two lots in Sixty-Third street, and the personal property and furniture in the house. The bankrupt resides with her, and they and their children have been supported out of this income of $10,500 a year in a style of living shown by the evidence, as to servants and horses and carriages, entirely inconsistent with any honest and fair dealing by the bankrupt towards his creditors, whose debts not barred by limitation, and nearly all in judgment, amount to over $10,000. The eighth specification is substantially proved, and the facts set up in it and shown by the testimony to exist, bring this case within several of the grounds for withholding a discharge set forth in the 29th section. He has wilfully sworn falsely in the affidavit annexed to his inventory, in stating that he has no assets; he has concealed his property derived from profits in the firm in which he is and has been really a partner by covering them up in the hands of his wife; and he has been guilty of fraud in not delivering such property to his assignee. A bankrupt law which should admit of a discharge in such a case as this would not be likely to remain long on the statute book. The discharge is refused.

[NOTE. The case was afterwards referred back to the register for further testimony, and the case was then heard on the whole testimony. The discharge was refused. Case No. 11,581.]